UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEVIN L. MARTIN, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 2:19-cv-00041-JPH-DLP |
| R. BROWN, | ) ) ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Kevin Martin's petition for a writ of habeas corpus challenges his conviction in a prison disciplinary proceeding identified as WVS 18-10-004. For the reasons explained in this Entry, Mr. Martin's petition is **DENIED**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

WVS 18-10-004 began with the following conduct report, written on October 5, 2018, by Lieutenant C. Nicholson:

> On 10/5/18 at approximately 09:28 AM, I Lt. C. Nicholson assisted Caseworker J. Meeks with the delivery of legal work through the cuff port of cell 406 (assigned to Offender Martin, Kevin # 169789). Offender Martin # 169789 grabbed a styrofoam cup of a dark substance (with the odor of feces) and threw it on J. Meeeks and I through the cuff port. I and J. Meeks exited the range.

Dkt. 7-1.

On October 11, 2018, Mr. Martin received a screening report notifying him that he had been charged with battery in violation of Code A-102. Mr. Martin requested extensive evidence, including statements from several members of the prison staff, an interview request form Mr. Martin sent to Internal Affairs, and security video that he said would show his interactions with Ms. Meeks on several occasions before October 5, 2018. *See* dkt. 7-2.

WVS 18-10-0004 was originally scheduled to proceed to a hearing on October 16, 2018, but the prison staff delayed the hearing so it could gather the evidence Mr. Martin requested. *See id.* at 5. Mr. Martin's hearing took place on October 23, 2018. Dkt. 7-3. The hearing officer's report indicates that he reviewed video of the incident from October 5 and statements from the officers that Mr. Martin requested. *Id.* The hearing officer found Mr. Martin guilty of battery and assessed sanctions, including the deprivation of 180 days' earned credit time and a demotion of one credit-earning class. *Id.* Mr. Martin's administrative appeals were denied. *See* dkt. 7-4.

## III. Analysis

Mr. Martin does not dispute that he threw feces at Lieutenant Nicholson and Ms. Meeks on October 5, 2018, or even that sufficient evidence supported his conviction in WVS 18-10-0004. An inmate commits battery in violation of Code A-102 by, "in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person." Dkt. 7-5 at § 102. Lieutenant

Nicholson's conduct report documenting that Mr. Martin threw a dark substance that smelled like feces on Lieutenant Nicholson and Ms. Meeks was enough to establish Mr. Martin's guilt under the lenient burden of proof applicable in a prison disciplinary proceeding. *See Ellison*, 820 F.3d at 274 ("[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary.").

Instead, Mr. Martin argues that he is entitled to habeas relief on two procedural grounds: that the hearing officer refused to consider exculpatory evidence, and that the hearing officer was biased against him. For the reasons set forth below, neither of these arguments presents a basis for habeas relief.

**A.     Failure to Consider Evidence**

Mr. Martin asserts that the hearing officer arbitrarily refused to consider evidence favorable to his defense, including a "request form from IA" and video from incidents that occurred on August 28, October 2, and October 4, 2018. Dkt. 1 at 3. Mr. Martin also argues that the hearing officer wrongly refused to test Lieutenant Nicholson's and Officer Meeks' clothing and the styrofoam cup described in the conduct report, presumably to verify whether the substance he threw at them was feces. *Id.*

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

Mr. Martin has not provided any reason why video from August 28, October 2, or October 4, 2018, would be material to or support his innocence in an incident that occurred on October 5,

3

2018. Mr. Martin appears to suggest that the video from these dates would show inappropriate conduct by Sergeant Nicholson or Ms. Meeks that motivated him to throw feces on them on October 5. However, even assuming that video showed misconduct by Sergeant Nicholson or Ms. Meeks toward Mr. Martin before October 5, it would not undermine or contradict the conclusion that he threw feces at them on October 5. Moreover, Mr. Martin has not directed the Court to any provision of law or the disciplinary code that would deem his actions justified or otherwise absolve him of guilt for throwing feces at prison staff because of their previous actions.

Similarly, Mr. Martin does not state what the "request form from IA" would have shown. He does not indicate that the request form would undermine the conclusion that he threw feces at Lieutenant Nicholson and Ms. Meeks on October 5.

In sum, the Court has no reason to believe that the video and documentary evidence Mr. Martin requested would undermine the hearing officer's finding that Mr. Martin battered Lieutenant Nicholson and Ms. Meeks or raise a reasonable probability of a different outcome. Accordingly, Mr. Martin had no right to present that evidence at his disciplinary hearing, and the hearing officer's refusal to consider it did not deny Mr. Martin due process.

Mr. Martin's assertion that due process required the prison staff to run tests to verify that the substance he threw was feces "fails because he is not entitled to [such testing] at a prison disciplinary hearing as a matter of law." *Jemison v. Knight*, 244 F. App'x 39, 42 (7th Cir. 2007). Even in criminal proceedings, where the burden of proof is much higher, the Seventh Circuit has held that "neither expert testimony nor a chemical test" is required to verify the composition of a substance. *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004). The Seventh Circuit has extended this principle to prison disciplinary proceedings involving controlled substances. *See Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017) (holding that petitioner "was not entitled

to demand laboratory testing" of substance alleged to be methamphetamine); *see also Jemison*, 244 F. App'x at 42 (holding that prison staff was not required to administer polygraph test to overcome inmate's assertion that he did not intend to spit on officer). The Court finds no reason why a different rule should apply to the substance that Lieutenant Nicholson identified as feces.

"Prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley*, 699 F. App'x at 576. Accordingly, the prison staff's refusal to test the cup or clothing did not deprive Mr. Martin of due process.

As a final note, these conclusions are unaffected by the prison staff's decision to delay Mr. Martin's hearing so it could "get all evidence and statement requested by" Mr. Martin. Dkt. 7-2 at 5. Mr. Martin requested a large volume of evidence to present in his defense, including statements from multiple officers and video from multiple dates. The fact that the prison staff made an effort to obtain much of that evidence before the hearing does not mean that it denied Mr. Martin due process by failing to produce or consider all of it. Due process only required the prison staff to produce and consider material, exculpatory evidence, and the decision to postpone the hearing expanded neither the scope of Mr. Martin's constitutional rights nor the field of relevant evidence.

**B.     Bias by Hearing Officer**

Mr. Martin argues that the hearing officer was "bias[ed] against" him. Dkt. 1 at 3. Mr. Martin does not point to any evidence of bias except the hearing officer's refusal to consider the evidence discussed in Part III(A) above and the fact that the hearing officer found him guilty of battery.

A prisoner in a disciplinary action has the right to be heard by an impartial decision-maker. *Hill*, 472 U.S. at 454. "A 'sufficiently impartial' decision-maker is . . . necessary, in order to shield

the prisoner from the arbitrary deprivation of his liberties." *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed on the prison staff. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

There is no indication that the hearing officer in this case was involved in the incident underlying Mr. Martin's disciplinary charge or the investigation of it. Indeed, Mr. Martin has not pointed to any indication of partiality except that the hearing officer disagreed with him about what evidence was relevant to the case. This disagreement was justifiable for the reasons discussed in Part III(A) above and, in any event, was not enough to undo the presumption that the hearing officer heard Mr. Martin's case impartially.

### IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Martin's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Martin's petition for a writ of habeas corpus must be **DENIED** and the action **DISMISSED with prejudice.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 6/2/2020

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN L. MARTIN
169789
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov